**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KENNETH SKARUPPA,** | : | **CASE NO. 1:11-CV-1043** |
| | : | |
| **Plaintiff,** | : | **MAGISTRATE JUDGE** |
| | : | **VERNELIS K. ARMSTRONG** |
| **vs.** | : | |
| | : | **MEMORANDUM OPINION** |
| **MICHAEL J. ASTRUE,** | : | **AND ORDER** |
| | : | |
| **Defendant.** | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g)  of Defendant's final determination denying his claim for Period of Disability and Disability Insurance Benefits (DIB) under Title II of the Act, 42 U. S. C. §§ 405 et seq.  On August 30, 2011, the parties to this action consented to have the undersigned Magistrate adjudicate all further proceedings and enter judgment in this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73 (Docket No. 13).  Pending are the parties' briefs on the merits (Docket Nos. 16 & 20).  For the reasons that follow, the Magistrate Orders that the Commissioner's Decision be Affirmed.

**I.  Procedural Background**

The Plaintiff, Kenneth Skaruppa, protectively filed his application for Period of Disability and Disability Insurance Benefits on May 5, 2008, alleging an onset of disability date of March 4, 2008, due to debilitating back pain (Tr. 86-95).[1]  On October 23, 2008, the state

---

[1]  All references to the transcript in this Opinion refer to Docket No. 10, with page number references to the page numbers located at the lower right.

agency initially denied Plaintiff's application, and on June 18, 2009 his application was again

denied on reconsideration (Tr. 61-72).  On July 17, 2009, Plaintiff requested a hearing before an

ALJ (Tr. 73-74).

On April 21, 2010 a video hearing was held before Administrative Law Judge (ALJ) Tom

Duann.  Plaintiff testified at the hearing and was represented by an attorney.  Also Vocational

Expert Linda Augins appeared and gave testimony at the hearing (Tr. 38-60).  On June 11, 2010,

ALJ Duann issued a Notice of Decision-Unfavorable, finding that Plaintiff was not disabled

under §§ 216(i) and 223(d) of the Social Security Act (Tr. 8-19).

On July 7, 2010, Plaintiff objected to the ALJ's findings and requested review of the

hearing decision (Tr. 6-7).  Finding no basis for review, on April 20, 2011, the Appeals Council

issued a Notice of Appeals Council Action, leaving the hearing decision as the final decision of

the Commissioner (Tr. 1-3). Plaintiff is before this Court seeking judicial review pursuant to 42

U.S.C. § 405(g) (Docket No. 1).

## II.  Jurisdiction

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to

42 U.S.C. § 405(g).  McClanahan v. Commissioner of Social Security, 474 F.3d 830, 832-33 (6th

Cir. 2006).

## III.  Factual Background

### A.  Plaintiff's History

Plaintiff was born on March 1, 1967.  He completed the eleventh grade.  His work history

2

included truck driver, tow motor operator, press operator, factory worker, and laborer between 1991 and 2008 (Tr. 88, 124, 129, 131, 177, 264).

On March 4, 2008, Plaintiff stopped working purportedly "due to [his] medical condition" (Tr. 48, 123) , i.e., back problems.  In a Disability Report that accompanied his initial application, Plaintiff stated: "I have trouble walking.  I have been using a wheelchair or crawling around. I can walk on my own for approximately 3 minutes. I have troyble [sic] standing. I can stand for approximately one minute." (Tr. 123).

Plaintiff has also reported that his daily activities since he stopped working have included doing household chores, preparing meals, caring for his dog, shopping in stores, reading, and watching television (Tr. 145, 159–61, 260).  He also stated in a Function Report from March, 2009, that he occasionally required assistance putting on his socks and shoes. He used a shower seat and, from time to time, needed help to wash his lower body.  He also stated that when cooking he will prepare meals that only require ten minutes or less (Tr. 158-165).  Plaintiff stated that his girlfriend helped him with chores around the house, both indoor and outdoor, when he is not able (Tr.161).  When grocery shopping, he will frequently use a store scooter to assist moving around the store to shop (Tr. 161).  Plaintiff has opined that he has problems getting along with others because he "can get very annoying and depressing being in pain and stuck indoors not able to do what [he] used to do."  However, Plaintiff stated that his ability to handle stress is "fair" (Tr. 162, 164).

### B.  Relevant Medical Evidence and Opinion

#### 1.  Physical Condition

●**April 15, 2006,  MRI** of Mr. Skaruppa's lumbar spine revealed progression of degenerative changes at L4-5 and L5-S1 since 1997 with more prominent neural foraminal narrowing on the

3

left (Tr. 188).

**Ashtabula County Medical Center (ACMC)**
●**April 9, 2007**, Plaintiff was seen in the emergency department for low back pain radiating into his left hip and leg lasting several weeks (Tr. 194-198). He was discharged with prescriptions for Motrin, Robaxin and Ultracet with a diagnosis of chronic low back pain (Tr. 195).
●**March 5, 2008**, Plaintiff was seen again for an exacerbation of low back pain radiating into his left leg (Tr. 189-193). He was discharged with prescriptions for Vistaril, Tolectin, Parafon Forte and Prednisone with diagnoses of chronic back pain and sciatica (Tr. 191, 193).

**Geneva Medical Center Emergency Department**
●**March 13, 2008**, Plaintiff presented with increasing low back since his last emergency room visit (Tr. 207, 225-229). He had recently seen his primary care physician Dr. Brant who ordered an MRI; but was unable to tolerate the MRI and Dr. Brant ordered medication in order to help Plaintiff tolerate the procedure (Tr. 228).  Plaintiff's pain was described by the attending physician as "sharp, acute, radiating and moderate to severe," exacerbated by movement and walking and associated with some numbness in the left buttock and leg (Tr. 227). The attending doctor noted that Plaintiff seemed quite uncomfortable, had positive straight leg raising on the left and was exhibiting anxiety related to his pain (and that he was currently taking Vistaril for ongoing anxiety symptoms) (Tr. 227, 228). Plaintiff received Dilaudid, Vistaril and Norflex intramuscularly without relief, and was subsequently given Dilaudid, Valium, Oxycodone/Percocet and Morphine (Tr. 228). Discharge diagnosis of left-sided sciatica (Tr. 207).
●**March 14, March 27 and April 24, 2008**, Plaintiff underwent epidural steroid injections (Tr. 200-202, 204-206, 208-213, 214-220, 221-224, 230-231, 238-239, 242).
●**March 21, 2008**, **MRI** of lumbar spine revealed multilevel lumbar spondylosis most pronounced at the L4-5 and L5-S1 levels and specifically:

> [a]t the L5/S1 level, there is mild posterior osteophytic spurring and a posterior disc bulge. There are mild degenerative facet changes. There is mild overall central canal stenosis. There is asymmetric encroachment upon the left lateral recess when compared with the right. There is mild to moderate right-sided neuroforaminal narrowing and mild left-sided neuroforaminal narrowing.
>
> At the L4/5 level, there is broad-based disc herniation centered to the left of midline with extruded disc material extending cranially along the left posterolateral margin of the L4 vertebra body into the region of the left neural foramen. There are degenerative facet changes bilaterally. There is encroachment upon the lateral recesses bilaterally left greater than right. There is mild overall central canal stenosis. There is severe left-sided neuroforaminal narrowing and mild to moderate right-sided neuroforaminal narrowing.

(Tr. 240).

4

**Dr.Naomi Waldbaum, M.D. Consultative Examining Physician** examined Mr. Skaruppa on
●**August 19, 2008**, per  request of the Bureau of Disability Determination (Tr. 262-269).
Plaintiff stated that his pain was:

> in my low back from the center up halfway and it goes out to the left all the way
> down on the outside of the hip and down the back behind my knee and down the
> whole leg into the front and back of the calf into the ankle and toes and the
> bottom
> of the foot. It's a cramping pain like it seizes up into spasm. It's 24 hours a day.
> It's like a lot of hot spikes all the time. Inside my ankle feels tingly.

(Tr. 263).

A treatment regimen of epidurals was initiated which was helpful, but physical therapy only
made him worse (Tr. 263).  On physical examination Plaintiff maneuvered in a very tense, slow,
careful manner with significant apprehension and was somewhat fearful of movements with his
left lower extremity (Tr. 264).  Plaintiff reported that he was "functional" in his activities of
daily living (Tr.264). Dr. Waldbaum observed that he  "ambulate[d] into the evaluation room in
a
functional and non-antalgic manner" (Tr. 264), and that after the examination "he was noted to
bend down and put on his socks, shoes, and tie shoelaces without difficulty" (Tr. 264).  Plaintiff
was noted to have a stable gait and intact reflexes (Tr. 264), and shoulder, elbow, and wrist
movements were normal (Tr. 264)  He was able to heel and toe walk while holding onto the bed,
but described a tingly-response to sensory testing over the left lower extremity, had difficulty
extending the left lower extremity and became very apprehensive, exhibited positive left straight
raising to 60 degrees and complained of discomfort over the lumbosacral angle area and the left
sacroiliac joint area with some discomfort along the sciatic distribution (Tr. 264-265).  X-ray of
the lumbar spine showed degenerative changes at the L4-5 and L5-S1 levels (Tr. 262). Dr.
Waldbaum concluded that her examination showed that Plaintiff exhibited some ongoing,
chronic pain behavior (Tr. 265).  She noted that Plaintiff should be evaluated by a surgeon as he
has a radiculopathy and would require further pain management with a behavior cognitive
approach (Tr. 265). Dr. Waldbaum opined that Plaintiff Skaruppa "should be able to perform
sedentary to light type work if he can obtain better control of his pain symptoms" (Tr. 265).  She
also stated that Plaintiff exhibited  "mild chronic pain behavior," (Tr. 265).


**Dr. Gregory Brant, D.O., Primary Care Physician**
●**July, 2008**, Dr. Brant treated Plaintiff from September, 1999 to 2008 for shoulder and lower
back problems (Tr. 246-247). Dr. Brant stated that Plaintiff complained of increased and
"terrible" lumbosacral back pain radiating into his legs at his last visit after a slip and fall

5

incident (Tr. 246, 319).[2]   The doctor prescribed Oxycodone, Robaxin and Ibuprofen and advised Mr. Skaruppa to obtain an MRI (Tr. 246, 319). Dr. Brant stated:

> [i]t is obvious that Mr. Skaruppa has problems with his back and significant pain and limitation of motion which he has had for many, many years. However, he did sustain a significant slip and fall injury, re-injuring and aggravating his back approximately 3/1/08 and now is in a very bad situation. He has a tolerance and an  addiction to pain medication as well as emotional issues. At this time, it would appear that he is disabled and I would recommend that he be seen by a psychologist.

(Tr. 247).

**William Bolz, M.D.**, **Agency Reviewing Physician**
●**October 22, 2008**, completed a residual functional capacity assessment (Tr. 270-277). Pursuant to his review of Plaintiff's medical record, Dr. Bolz determined that Plaintiff's allegations of disabling symptoms were "not credible" (Tr. 275).  He stated that Plaintiff could occasionally lift, carry, push or pull 20 pounds; frequently lift, carry, push pull 10 pounds; sit, stand or walk for 6 hours in an 8-hour workday; never climb ladder/rope/scaffolds and occasionally stoop, crouch and crawl (Tr. 271-272).

**Gerald Klyop, M.D., State Agency Reviewing Physician**
●**July 18, 2009**, affirmed Dr. Bolt's assessment (Tr. 307).

**Dr. Adam M. Davis, D.C., Treating Chiropractor**
●**December, 2008**, Plaintiff received chiropractic treatment several times (Tr. 279-286). A lumbar spine x-ray revealed severe decrease in disk space at the L4-5 and L5-S1 levels with right rotation malposition of L5 on S1 and some facet hypertrophy throughout the spine (Tr. 286). Dr. Davis' examination findings included diminished reflexes, sensory deficits, muscle spasm, limited ranges of motion and radiculopathy (Tr. 279, 282, 284). Dr. Davis stated that Plaintiff had little or no relief of his pain from chiropractic treatment and referred him back for pain management (Tr. 279). However, Dr. Davis did opine that Plaintiff could use his extremities for functional tasks but would be limited due to pain and his chronic condition (Tr. 279).

**Dr. Bruce Piszel, M.D.**
●**March 26, 2009**, Plaintiff saw Dr. Piszel, presenting with constant, sharp low back pain aggravated by activity (Tr. 287-288). Dr. Piszel continued Plaintiff on Oxycodone and noted that Mr. Skaruppa was stable and compliant (Tr. 288).
●**March 23, 2010**,  Dr. Piszel ordered an MRI, that showed lumbar spondylosis most severe at L4-5 (moderate facet degenerative changes with moderate right and mild left neural foraminal

---

[2]   Dr. Brant's dictation reports indicate the date as March 2, 2000, but this appears to be a typographical error as his treatment notes reveal he saw Plaintiff March 6, 2008 (Tr. 319).

stenosis) and L5-S1 (severe facet degenerative changes resulting in moderate bilateral neural foraminal stenosis) with diffuse disk bulge with left paracentral protrusion narrowing the left lateral recess at L5-S1 with mass effect on the left S1 nerve root (Tr. 325-326).

●**May 21, 2010**, Dr. Piszel completed a physical capacity  medical source statement stating that Plaintiff could lift/carry up to 10 pounds for 5 minutes at a time for a maximum of one-third of an 8-hour day, could stand/walk for 8 hours but would require a break every 15 minutes, could sit for 8 hours but would need a break every 15 to 20 minutes, could rarely (or never) climb, balance, stoop, crouch, kneel and crawl, could occasionally reach, handle,
feel, push/pull and manipulate objects. The doctor's assessment was based on the MRI findings. Dr. Piszel reiterated his opinion that Plaintiff would need additional breaks throughout the day (in addition to morning, lunch and afternoon breaks) and that he was not able to sit/stand/walk continually.  In addition, Dr. Piszel indicated that due to Plaintiff's use of opioid medication he would not be able to focus for long and should not drive for any length of time. (Docket No. 16, Attachment, No. 1)

### 2.  Mental Condition

**Leslie Rudy, Ph.D., State Agency Reviewing Psychologist**
**July 21, 2008**, Dr. Rudy performed a psychiatric review technique (Tr. 248-261). She stated that Plaintiff did not have a "medically determinable impairment" but then also remarked (somewhat inconsistently) that he had a "medically determinable impairment" (i.e., reactive anxiety symptoms) that did not precisely satisfy the diagnostic criteria of 12.06 for anxiety-related disorders (Tr. 248, 253). In the consultant's Notes section, she noted that a medically determinable impairment is not established
in the evidence and the claimant denied the presence of, and did not allege any, psychological condition (Tr. 260).

**Richard C. Halas, M.A. Consultative Psychologist**
●**March 30, 2009**, performed a consultative psychological evaluation (Tr. 289-292). Mr. Halas reported that Plaintiff's speech pattern was slow and constricted; seemed to have marked poverty of speech, Plaintiff described  having crying spells; was observed to have crying spells and tearful episodes during examination; exhibited flat and shallow affect and depressed mood; psychomotor activity reflected retardation, energy level was poor and he expressed feelings of hopelessness, helplessness, worthlessness and guilt (Tr. 289-290).  Mr. Halas also noted that during the examination Plaintiff "indicate[d] that it is primarily his physical problems that keep him from working competitively at this time" (Tr. 291).  Mr. Halas also observed that Plaintiff "generally shows to have relatively high levels of anxiety" and exhibited fidgeting and trembling hands (Tr. 290), and he further noted that Plaintiff  "has apparently never consulted with a psychologist or psychiatrist for personality and/or emotional problems" (Tr. 291).  Plaintiff's daily activities included taking medications, laying down in an attempt to reduce his pain and sharing household chores with his girlfriend (Tr. 291). He reported having few friends except for his girlfriend (Tr. 291). Mr. Halas also determined that Plaintiff's ability to understand, remember, follow instructions; maintain attention and concentration to perform simple, repetitive tasks was not impaired; that his ability to relate to others and handle the stress and pressure of

daily work activity was moderately impaired (Tr. 292). He diagnosed Skaruppa with depressive disorder and anxiety disorder (Tr. 292). Mr. Halas opined that Mr. Skaruppa's mental ability to relate to others, including fellow workers and supervisors, would be moderately impaired as his psychological and emotional problems would likely restrict effective and appropriate interactions with others and that his mental ability to withstand the stresses and pressures associated with day-to-day work settings would be moderately impaired as his psychological and emotional problems would likely be quickly exacerbated under the pressures of a normal work setting (Tr. 292). Mr. Halas gave Plaintiff a GAF score of 55, moderate symptoms.[3]

**Dr. Joan Williams, Ph.D. State Agency Reviewing Psychologist**
**April 10, 2009**, completed a psychiatric review technique and determined that Plaintiff's mental impairments were not severe under the associated categories for affective disorders and anxiety-related disorders (Tr. 293-306). She determined that although Plaintiff suffered from affective and anxiety-related disorders, none of these disorders constituted severe impairments (Tr. 293) She found that his restriction of activities of daily living were mild, his difficulties in maintaining social functioning were mild and his difficulties maintaining concentration, persistence and pace were mild (Tr. 303). She concluded that the medical record "does not document a longitudinal pattern of severe or substantial mental functional deficiency," Dr. Williams opined that Plaintiff's condition posed no more than mild limitations on his functional capacity (Tr. 303–05). Dr. Williams rejected Mr. Halas's opinion because she felt it lacked longitudinal support (Tr. 305).

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

At the April 21, 2010 video hearing Plaintiff testified that he drives about three to four times a week, mostly to doctors' appointments and to get his medicine (Tr. 46). He stated that his girlfriend drove him to the hearing. (Id.) He had not traveled away from home (more than 100 miles) in the past year (Tr. 46-47). Plaintiff testified that he spent most days laying in bed with a heating pad and elevating his leg which provides him the most relief (Tr. 47, 53).

---

[3] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

Plaintiff noted that he stopped working in early 2008, when his "back went out" and he indicated that he did not feel he could go back to work due to the constant pain he claims that he experiences, as well as because of limitations on sitting, standing, walking and bending (Tr. 48-49, 50-51). He described the pain is in his low back, that it traveled down his left leg into his left foot and was associated with numbness in his left foot (Tr. 50). He stated that he cannot stand to wash dishes, cannot cut the grass and does not do other household chores (Tr. 51). Plaintiff indicated that he goes grocery shopping occasionally, although he has difficulty and either uses an electric cart or uses the standard cart as a walker (Tr. 51-52). His girlfriend helps him by leaving him food and drinks on his bedside table and also helps him shower at times (otherwise, he always uses a shower stool) (Tr. 52, 55). He stated that his medications "take the edge off," but that his doctor told him that surgery would not improve his condition (Tr. 55).

## 2.  Vocational Expert Testimony, VE Linda Algins

VE Algins testified that Plaintiff performed work as a dock laborer (semi-skilled and heavy), a fiberglass press operator (semi-skilled and medium), a truck driver (semi-skilled and medium) and a tow motor operator (semi-skilled and medium) (Tr. 57). In response to a hypothetical question that described a hypothetical individual of Plaintiff's age, education and work experience limited to light work (Tr. 57),[4] with no ladders, ropes or scaffolds and occasional stooping, crawling and crouching, the VE testified that such an individual could not perform any of Plaintiff's past work but could perform a variety of jobs in the national economy,

---

[4]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

including flagger (approximately 196,000 jobs); rental clerk (approximately 435,000 jobs); and laundry sorter (approximately 450,000) (Tr. 57–58).  In response to a second hypothetical question that assumed the same individual but added that the individual must lay down and stretch his back 20 minutes every hour (Tr. 58),  VE Algins responded that such an individual would be precluded from performing any work with the added limitation (Tr. 58).  Ms. Algins also stated that, customarily, more than two absences per month would not be tolerated by an employer and that taking more than the customarily permitted two breaks (10 to15 minutes) and lunch (30 to 60 minutes) per day on a regular basis would also eliminate working in a competitive environment (Tr. 58).

### IV. Analytical Overview: Determining Disability

DIB and SSI are properly awarded only to applicants who are determined to suffer from a "disability."  Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007), (citing, 42 U.S.C. § 423(a), (d)).   "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Colvin, supra,  (475 F.3d at 729), citing, 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

In determining disability under 42 C.F.R..§§ 404.1520 and 416.920, the ALJ must undertake a five step sequential analysis:

> **Step 1**: Determine whether the applicant is  engaged in "substantial gainful
> activity" at the time benefits are being sought.  If yes,  the applicant is not

disabled. If no, then move to step 2.[5]

**Step 2**: Determine whether the applicant suffers from any impairment which, either by itself or in combination with one or several other impairment, is "severe." If there is no finding of a "severe" impairment, then there is no disability. If there is a determination that the applicant suffers a "severe" impairment, move to step 3.[6]

**Step 3**: Determine whether any previously identified severe impairment meets or equals a listing in the Listing of Impairments. If yes, then the applicant is disabled. If no, proceed to step 4.[7]

**Step 4**: Determine if the applicant retains sufficient "residual functional capacity"[8] to allow for the performance of his past, relevant work . If the applicant possesses sufficient residual functional capacity to perform his past relevant work, then there is no disability. If not, move to step 5. [9]

---

[5]  Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R § 404.1572(a) and 20 C.F.R § 416.972(b). "Gainful work activity" is work that is usually done for pay or profit, whether or not profit is realized. 20 C.F.R § 404.1572(b) and 20 C.F.R § 416.972(b). If an individual engages in substantial gainful activity that person is determined not to be disabled, regardless of the severity of any otherwise identified impairments, mental or physical.

[6]  Under the regulations, an impairment or combination of impairments is "severe"if it significantly limits the individual's ability to perform basic work activities. Impairments are "not severe" where medical and other evidence establish only slight abnormalities, individually or in combination, that have no more than a minimal, adverse effect on the individual's ability to work. 20 C.F.R § 404.1521 and 20 C.F.R § 416.921.

[7]  The previously identified severe impairment or combination of impairments must meet or medically equal an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. 20 C.F.R §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[8]  A determination of the applicant's residual functional capacity must be done before the determination of whether applicant can perform past relevant work. . 20 C.F.R § 404.1520(e) and 20 C.F.R § 416.920(e). An applicant's residual functional capacity is the ability to perform physical or mental work activities on a sustained basis even though the applicant may suffer limitations from his impairments. In making a residual functional capacity determination all the applicant's impairments, including those impairments that are not severe, must be considered. 20 C.F.R § 404.1520(e), 20 C.F.R §§ 416.920(e) and 416.945.

[9]  Past relevant work means work performed either as the applicant actually performed it or as it is generally performed in the national economy either within the past 15 years or 15 years

> **Step 5**: Determine if there are jobs in the current economy that applicant could perform, given the limits of her residual functional capacity and consistent with the applicant's other relevant characteristics.  If there are such jobs, then the applicant is not disabled.  If there are no such jobs, then the applicant is disabled. [10]

See Heckler v. Campbell, 461 U.S. 458, 460, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983), see also Combs v. Comm'r of Soc. Sec., 400 F.3d 353 (6th Cir. 2005),  Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003);  Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1110 (6th Cir. 1994).  20 C.F.R. § 404.1520 (1982););  Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028-29 (6th Cir. 1990),. Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. The ALJ's Findings

The ALJ made the following findings:

**1**. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013 (Exhibit 4D).
**2**. The claimant has not engaged in substantial gainful activity since March 4, 2008, the alleged onset date (Exhibit 3E) (20 CFR §§ 404.1571 et seq.).
**3**. The claimant has the following severe impairment: degenerative disc disease of the spine (20 CFR § 404.1520(c)).
**4**. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526).
**5**. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR

---

prior to the date the disability must be established. Additionally the work must have lasted long enough for the applicant to have learned the job and for it to have become substantial gainful activity for him.  20 C.F.R §§ 404.1560(b) 404.1565 and 20 C.F.R §§ 416.960(b) and 945.965.

[10]   The determination of whether the applicant can do any work at all must take into consideration the applicants residual functional capacity along with the applicant's age, education and work experience.  At this stage the burden is upon the Commissioner to show that work exists in significant numbers within the economy that the applicant can do, given the applicant's limiting characteristics.  20 C.F.R §§ 404.1512(g) 404.1560(c) and 20 C.F.R §§ 416.912(g) and 945.960(c)    .

§ 404.1567(b). The claimant can perform jobs that require only occasional stooping, crouching, and crawling and no climbing of ladders, ropes or scaffolds.

**6**. The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

**7**. The claimant was born on March 1, 1967 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (Exhibit 1E) (20 CFR § 404.1563).

**8**. The claimant has a limited education and is able to communicate in English (Exhibit 2E) (20 CFR § 404.1564).

**9**. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

**10**. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569 and 404.1569(a)).

**11**. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2008, through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 13-18).

## VI. Standard of Review

District Court review of Commissioner of Social Security disability determinations is limited to evaluating whether the decision made by the Commissioner is supported by "substantial evidence" and consistent with applicable, legal standards. Colvin v. Barnhart , supra, 475 F.3d at 729. The district court shall affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. McClanahan v. Comm'r of Soc., 474 F.3d 830 at 833 (citing Branham v. Gardner, 383 F.2d 614, 626-627 (6th Cir. 1967)). The Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence. Id. (citing 42 U.S.C. § 405(g )).

"Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Besaw v. Secretary of Health and Human Services, 966 F.2d 1028, 1030

(6th Cir.  1992)).  <u>See</u> <u>also</u> <u>Cutlip v. Sec'y of Health & Human Servs</u>, 25 F.3d 284, 286 (6th Cir. 1994).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  <u>Buxton v. Halter</u>, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).

Moreover, because district court  review of the Commissioner's decision is, essentially, appellate in character, the court is not to undertake <u>de</u> <u>novo</u> review, and is restrained from attempting to resolve evidentiary conflicts as well as from  making credibility determinations. <u>Cutlip</u>, <u>supra</u> 25 F.3d 284, 286 (<u>citing</u> <u>Brainard v. Secretary of Health and Human Services</u>, 889 F. 2d 679, 681 (6th Cir. 1989); <u>Garner v. Heckler</u>, 745 F. 2d 383, 387 (6th Cir. 1984)).   Rather, the reviewing court is bound to affirm the Commissioner's decision, provided that such decision is supported by substantial evidence, even if the court were inclined to have decided the case differently.  <u>Her v. Comm'r of Soc. Sec.</u>, 203 F.3d 388, 389-90 (6th Cir. 1999).  Where supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring plaintiff's side.  <u>Listenbee v. Sec'y of Health & Human Servs.</u>, 846 F.2d 345, 349 (6th Cir. 1988).  The decision by the administrative law judge is not subject to reversal even where substantial evidence could have supported an opposite conclusion.  <u>Smith v. Chater</u>, 99 F.3d 780, 781-82 (6th Cir. 1996).

**VII.  Issues Before the Court**

This case raises three issues for review.

Issue No. 1   Whether the Administrative Law Judge's Finding That the Plaintiff Does Not Have a Severe Mental Impairment Is Supported by Substantial Evidence.

14

Issue No. 2.  Whether the Administrative Law Judge Properly Evaluated the Plaintiff's
Complaints of Disabling Pain.

Issue No. 3.   Whether Remand Is Warranted for Consideration of New
And Material Evidence.

## VIII.  Discussion

### Issue No. 1:  Severe Mental Impairment: Substantial Evidence.

Plaintiff asserts that the assessment by the ALJ that his mental conditions (specifically

depression and anxiety) are not severe is not supported by substantial evidence.[11]

A severe impairment is an impairment that significantly limits a claimant's physical or

mental ability to perform basic work activities. 20 CFR 404.1520(c), 416.920(c).  Basic work

activities are the capacities and aptitudes required to perform a job, e.g., the ability to perform

basic physical functions of seeing, hearing, etc., the ability to make appropriate, rational

judgments; the ability to follow instructions, etc.  20 CFR 404.1521(b).

In the Sixth Circuit an impairment is considered "not severe" where it is a slight

abnormality that produces a minimal effect on an individual which would not be considered

likely to interfere with the individual's ability to work, irrespective of age, education and work

experience. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6 th Cir. 1985);

Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir. 1985); Higgs v.

Bowen, 880 F.2d 860 (6th Cir. 1988).

Plaintiff asserts that the ALJ's determination that his mental impairments were non-

severe was not based on substantial evidence because the ALJ failed to refer to certain record

---

[11]   Whether evidence is substantial is determined by a review of the whole of the record.
Houston v. Secretary of Health and Human Services, 736 F.2d 365 (6th Cir. 1984).

evidence.  Plaintiff bears the burden of establishing that he suffers from severe impairments
Murphy v. Sec'y of Health & Human Servs., 801 F.2d 182, 185 (6th Cir. 1986) ("Plaintiff must
prove that the impairment is severe and that it significantly limits his ability to perform basic
work activities.").

Determining the severity of an impairment at step two of the sequential analysis is a
preliminary inquiry that serves the purpose of  "administrative convenience to screen out claims
that are totally groundless solely from a medical standpoint." Higgs v. Bowen, 880 F.2d 860,
862–63 (6th Cir. 1988).  Here the ALJ determined that the Plaintiff did suffer from a severe
impairment , i.e., degenerative disease of the spine, but not a severe mental impairment (Tr. 13).
However, at step two, the ALJ is not required to list all other such impairments that are not
severe.  Rather, the ALJ shall include such conditions later, when considering a claimant's
residual functional capacity.  Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244
(6th Cir. 1987).

According to Plaintiff, the ALJ " failed to mention the evidence from an attending
physician" that Plaintiff displayed anxiety with respect to his back pain and was taking
medication for his anxiety (Docket No. 16, p. 13; Tr. 227, 228).  Plaintiff notes that his treating,
primary care physician, Dr. Brant, stated that Plaintiff  "has a tolerance and an addiction to pain
medication as well as emotional issues" (Docket No. 16, p. 13-14; Tr. 247).  Plaintiff also draws
attention to the opinion of consultative examiner Dr. Waldbaum, who examined Plaintiff and
noted that Plaintiff exhibited some ongoing chronic pain behavior (Docket No. 16, p. 14; Tr.
265), as well as the observations of  consultative examining psychologist Halas of Plaintiff's
slow, constricted speech, crying spells, a flat and shallow affect, a depressed mood, retarded

16

psychomotor activity, poor energy level and feelings of hopelessness, helplessness,
worthlessness and guilt, as well as anxiety, was prone toward fidgeting, had trembling hands and
related having few friends except his girlfriend   (Docket No. 16, p. 14; Tr. 289-291). Mr. Halas
also opined that Plaintiff's depression and anxiety would interfere with this ability to relate to
others and affect his ability to withstand the stresses and pressures associated with day-to-day
work settings (Tr. 292).

      Plaintiff argues that the ALJ's determination of non-severe mental impairment based on
Plaintiff's performance of some few daily activities, the fact that he lives with his girlfriend and
made good eye contact with the consultative examiner ignores the above referenced evidence
and thus is not substantial evidence sufficient to support the ALJ's finding  (Docket No. 16,
p.14).

      After a review of the whole of the record, including objective medical evidence and the
assessments and observations of treating, examining and reviewing sources, the ALJ found
Plaintiff's mental impairments to be "non-severe."   The ALJ reached this conclusion pursuant to
undertaking a four part functional areas analysis as set forth in the "Paragraph B" criteria in §
12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix I), noting that, as
to the first functional area, "Activities of Daily Living," Plaintiff helped with household chores,
drove a car, occasionally went grocery shopping; as to the second functional area, "Social
Functioning," Plaintiff had no limitation, he lived with his girlfriend, made good eye contact, and
exhibited no objective findings indicating significant problems with social functioning; as to the
third functional area, "Concentration, Persistence and Pace," Plaintiff had no limitation, he
exhibited good concentration skills on examination, was able to recall three of three items after

17

five minutes, recall six digits forwards, and was fast and accurate in performing serial seven calculations,  and as to the fourth functional area, "Episodes of Decompensation," Plaintiff experienced no episodes of decompensation which have been of extended duration (Exhibit 15 F, Tr. 14).

Contrary to the contentions raised by Plaintiff, the ALJ herein properly addressed and reasonably considered the credible functional limitations that were attributable to Plaintiff's purported mental impairments. Moreover, Plaintiff's effort to reverse the ALJ's decision on the grounds that he purportedly suffered from debilitating anxiety and depression is undermined, if not contradicted,  by Plaintiff's own self reporting.

It is noteworthy that, for the disability period in question, Plaintiff did not assert a claim that he suffered from a disabling mental impairment when he submitted his application for benefits in May 2008 (Tr. 123).  Additionally, in July 2008, Plaintiff reported that he "doesn't have an anxiety issue," "has never once felt anxious or nervous," and "has never felt any symptoms of mental issues ever" (Tr. 144, 260).  Moreover, Plaintiff stated that he "never consulted with a psychologist or psychiatrist for personality and/or emotional problems" (Tr. 291).  In response to a question posed during the administrative hearing to explain, in his own words, why he felt he was unable to return to full time work the Plaintiff stated, "I know, I'm in a lot of pain.  I cannot state, there's no way I could do the job anymore.  I can't sit that long a period of time, can't stand and walk that long of a period."  (Tr. 49).  Thus, even as late as April 21, 2010, when asked an open ended question as to why he was disabled, Plaintiff made no reference, express or implied, to any limiting mental condition.

Accordingly, on this basis alone, Plaintiff has failed to satisfy his burden of establishing

that anxiety or depression constituted a severe impairment or otherwise significantly limited his ability to perform work-related activities. 20 C.F.R. § 404.1520(c).

The Court acknowledges that Plaintiff was diagnosed with anxiety and depression. Dr. Brant, Plaintiff's treating, primary care physician stated that Plaintiff had "emotional issues" (Tr. 247). The ALJ acknowledged this as well (Tr. 14) However, the ALJ ascribed little weight to Dr. Brant's opinion because, inter alia, his findings appeared to be "based on [Skaruppa's] subjective complaints" (Tr. 17). See Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876–77 (6th Cir. 2007) (ALJ properly discounted physician opinion that was based primarily on claimant's subjective complaints).

However, even a diagnosis of depression and/or anxiety in and of themselves is not necessarily sufficient to establish that either condition reached the level of a severe impairment, let alone a disability. See, e.g., Foster v. Bowen, 853 F.2d 483, 488–89 (6th Cir. 1988). Additionally, Drs. Rudy and Williams, state agency reviewing psychologists, determined that that Plaintiff did not suffer from a severe mental impairment (Tr. 246–61, 293–306).

It is this Court's opinion that that it was not unreasonable for the ALJ to accord these opinions "significant weight because they are consistent with the objective clinical findings, the conservative course of treatment, and [Skaruppa's] activities of daily living" (Tr. 17). See 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are . . . experts in Social Security disability evaluation."); Social Security Ruling 96-6p, 1996 WL:374180, at *2 (July 2, 1996) (same). The rational being that the whole of Plaintiff's medical record did not support a finding of a pattern indicating "severe or substantial mental functional deficiency" (Tr.303–05).

Therefore, based on the foregoing, this Court denies Plaintiff's Issue No. 1 and finds that there was substantial evidence for the ALJ's conclusions regarding Plaintiff's mental condition and, specifically, that such mental impairments as Plaintiff may have had were not severe.

**Issue No. 2:  Plaintiff's Complaints of Disabling Pain.**

Plaintiff asserts that the ALJ erred in his analysis of Plaintiff's degenerative disc disease. Plaintiff claimed that his lumbar degenerative disc disease caused him a disabling level of pain, and, for this reason,  his case must be analyzed under the appropriate "pain" standards (Docket No. 16, p. 15).

The Social Security regulations establish a two-step process for evaluating pain. 20 CFR section 404.1529, Social Security Ruling (SSR) 96-7p.  This process can be summarized as follows:

1. Determine whether there is objective medical evidence for the claimants allegation of pain.  If there is no such objective basis, the analysis need not proceed.  However, if there is an objective basis for a claimant's reports of pain, then the assessment must proceed to the next stage which requires, either

    a.  determining whether the (previously identified) objective medical evidence confirms the severity of the pain alleged to have arisen therefrom, or

    b.  determining whether the (previously identified) objective medical evidence is sufficiently severe that it is reasonable to conclude that it caused the pain described by the claimant.

See Duncan v. Secretary of Heath and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

In addition to undertaking an examination of the objective medical evidence of a claimant's allegation of pain, the ALJ is also required to assess a claimant's reports of pain utilizing the following six. criteria:

1.  The effect of the pain on the claimant's daily activities.

2. The bodily location, amount of time experienced, frequency of occurrence and description of the intensity of the pain.

3. Factors that precipitate or aggravate the manifestation of pain.

4. The use of pain relief medications, including the type, dosage regimen, effectiveness and side effects of such pain relief therapies and medications.

5. The use of non-medication pain relief therapies, including the type, usage regimen, effectiveness and side effects of such pain relief therapies and medications.

6. The opinions and statements of claimant's doctors.

See Felisky v. Bowen, 35 F.3d 1027, 1038-40 (6th Cir. 1994).

Therefore, the ALJ shall first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's pain and, second, after identifying the underlying, objectively determinable cause, assess the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. See Duncan and Felisky, supra. Additionally the ALJ shall assess the claimant's credibility and consider, inter alia, the claimant's statements about pain, its location, duration, frequency, etc., and other symptoms, along with the rest of the relevant evidence in the record, in accordance with the factors outlined in Social Security Ruling 96-7p. See SSR 96-7p. Felisky, 35 F.3d at 1039-40.

Plaintiff asserts that, in the instant case, the ALJ cited "to the proper regulations, Social Security rulings, and the two-prong test required to assess" Plaintiff's credibility regarding his statements concerning his pain (Docket No. 16, p. 16; Tr. 15). Plaintiff also states, correctly, that the ALJ acknowledged that Plaintiff's impairment could reasonably be expected to give rise to his alleged symptoms (Docket No. 16, p. 16; Tr. 16). Plaintiff argues, however, that, as to the second prong of the analytical framework, discussed above, the ALJ erroneously determined that

the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible as they were inconsistent with the residual functional capacity assessment (Docket No. 16, p. 16; Tr. 16).

The gist of Plaintiff's argument is that the ALJ selectively included medical evidence favorable to his finding and excluded evidence unfavorable to his finding (Docket No. 16, p. 16), referring to the Sixth Circuit's opinion in Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240-241 (6th Cir. 2002) (ALJ commits error in selectively including only portions of reports that show a claimant in a "capable light" but excluding those parts that present the claimant in a "less than capable light" because it suggests the ALJ has only considered part of the report in formulating his conclusion).

Plaintiff asserts that the ALJ -  in having cited only the most recent MRI findings revealing lumbar spondylosis and moderate neural foraminal narrowing at L4-5 and L5-S1 but not citing "severe facet degenerative changes" and "narrowing of the left lateral recess at L5-S1 with mass effect on the left S1 nerve root"-  was in error (Tr. 16, 326).  Similarly, Plaintiff argues that the ALJ identified mainly those portions of Dr. Waldbaum's report which elicited normal findings but ignored Mr. Skaruppa's statements that physical therapy did not help him, e.g., . that he maneuvered in a very tense, slow manner with significant apprehension, had "tingly" response to sensory testing over his left lower extremity which she concluded demonstrated he was suffering from a radiculopathy and that he "should be able to perform sedentary to light type work if he can better obtain better control of his pain symptoms" (Docket No. 16, p. 17; Tr. 264-265).

Furthermore, Plaintiff asserts that the ALJ completely ignored the evidence from Dr.

22

Davis, a chiropractor, which indicated that he derived little or no relief from chiropractic

treatment and that Plaintiff's functional ability was limited due to his pain (Docket No. 16, p. 17;

Tr. 279).

It is the view of this Court that  the ALJ's residual functional capacity finding reasonably

accounted for Plaintiff's limitations. The ALJ based his decision on a thorough review of the

overall evidentiary record and on Plaintiff's "allegations regarding the intensity, persistence, and

limiting effects of his symptoms" and found that those allegations were "not fully credible" (Tr.

16–17). See  Jones, 336 F.3d at 476 ("[A]n ALJ is not required to accept a claimant's subjective

complaints and may properly consider the credibility of a claimant when making a determination

of disability.").

The ALJ stated that Plaintiff's subjective claims regarding his pain were "not supported

by the objective clinical findings, the conservative course of treatment, or [his] activities of daily

living" (Tr. 16), and explained that "the findings from the physical examinations were mild, and

[Plaintiff's] back condition has been managed with conservative treatments consist[ing] of

medication and steroid injections" (Tr. 16). See 20 C.F.R. § 404.1529(c)(3)(v),(vi) (ALJ may

consider treatment and other measures to relieve symptoms in evaluating credibility).

The ALJ observed that Plaintiff's daily living activities were "inconsistent with his

allegations of total disability" (Tr. 16). See 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider

claimant's daily life activities in evaluating credibility) and determined that there were

inconsistencies in statements Plaintiff had made to examining medical sources regarding his pain

and overall condition, thereby diminishing Plaintiff's credibility (Tr. 16, 263–69, 289–292). See

Social Security Ruling 96-7p, 1996 WL 374186, at *5 (July 2, 1996) ("One strong indication of

23

the credibility of an individual's statements is their consistency, both internally and with other information in the case record.")

In this regard the Court takes note of the views of Dr. Bolz, an agency reviewing physician who opined that Plaintiff's statements were "not credible" (Tr. 275). Indeed, in conducting his consultative examination of Plaintiff, Dr. Bolz observed that Plaintiff had stated that he had "trouble walking and standing and can only stand for 1 minute" (Tr. 123, 275), but, nevertheless, Plaintiff had "no problem ambulating" during the his August, 2008, consultative examination with Dr. Waldbaum (Tr. 264, 275). He observed that Plaintiff "ambulate[d] into the evaluation room in a functional and non-antalgic manner" and "was noted to bend down and put on his socks, shoes, and tie shoelaces without difficulty" (Tr. 264).[3] There was, Dr. Bolz concluded, "nothing to suggest" that Plaintiff's condition actually caused the complained of functional limitations (Tr. 275).

As noted, above, Plaintiff also bases his Issue No. 2 objections on the ALJ not having expressly addressed the report of chiropractor, Adam Davis, D.C. (Docket No. 16, p. 17.). However, an ALJ is not required to provide a detailed analysis of all evidence in a claimant's medical record. Craig v. Apfel, 212 F.3d 433, 436 (6th Cir. 2000) (an ALJ is not "required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Moreover, Plaintiff has not made a case that chiropractor Davis's report effectively undermined the ALJ's credibility determination. See Shinseki v. Sanders, 129 S.Ct. 1696, 1706 (2009) ("[T]he burden of showing harmfulness is normally on the party attacking an agency's determination."). The record related to chiropractor Davis establishes essentially that Dr. Davis reported that Plaintiff "had little to no relief from

24

chiropractic treatment and was referred back to pain management" (Tr. 279), but not that Plaintiff was disabled.

There is also the record of consultative examining psychologist Dr. Halas who observed that Plaintiff did not appear to have difficulty sitting, standing, or walking during his consultative examination (Tr. 291).

The credibility determination of a claimant by an ALJ who has both reviewed the record and had an opportunity to both observe and communicate with a claimant is entitled to great weight and deference. Jones, 336 F.3d at 476. "Determination of disability from pain is peculiarly within the province of the ALJ." Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 464 (6th Cir. 1987).  There is almost always conflicting evidence in social security cases, and the fact that evidence could be construed differently is always a possibility, but the responsibility of the District Court is not to re-weigh the evidence, or to find substantial evidence favorable to the Plaintiff, but to determine if the ALJ's decision was supported by substantial evidence and not to disturb the ALJ's determination even if a case could be made for substantial evidence leading to a contrary conclusion.  Buxton v. Halter, 246 F.3d 762, 772–73 (6th Cir. 2001).

Accordingly, it is the view of this Court that there was substantial evidence to account for the ALJ's decision that Plaintiff's pain did not rise to the level of a disability.  Thus, Plaintiff's Issue No. 2 is not well taken.

**Issue No. 3:  Remand: New And Material Evidence.**

In his Issue No. 3 Plaintiff argues that remand is appropriate so as to allow the Commissioner to have the opportunity to consider the medical source statement of treating

physician Dr. Piszel.  Plaintiff asserts that Dr. Piszel's statement would establish that he needed

frequent breaks throughout the workday and that he was severely limited in his ability to perform

postural activities (Docket No. 16, Attachment)

Plaintiff states that Dr. Piszel's statement, which was dated May 21, 2010, was not in

existence at the time of the administrative hearing, which took place on April 21, 2010 and, thus

should be considered "new" and "material" evidence.[12]

Plaintiff argues that this evidence is "material" because it is "reasonable that the ALJ

would have reached a different conclusion had this assessment been before him" (Docket No. 16,

p. 19).  Plaintiff asserts that ALJ posed a hypothetical that, essentially, tracked the Dr. Piszel's

evaluation statement of Plaintiff when the ALJ asked the vocational expert to address an

individual's need for frequent breaks throughout the day (Tr. 58), and the VE responded that

such a need would eliminate work in a competitive environment (Tr. 58).  Plaintiff argues that

such evidence is corroborative of Plaintiff's own testimony that he is unable to sit, stand and

---

[12]   Where evidence is "new"and "material" and "good cause" is shown for the failure to
present the evidence to the ALJ, the case shall be remanded under, sentence six of 42 U.S.C §
405(g), to allow the Commissioner to consider the additional evidence.  Foster v. Halter, 279
F.3d 348, 357 (6th Cir. 2001).  It is the claimant's burden to show that a remand is appropriate.
Foster, 279 F.3d at 357, citing Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966
(6th Cir. 1986).
        Evidence is "new" "only if it was 'not in existence or available to the claimant at the time
of the administrative proceeding.'" Id., quoting Sullivan v. Finkelstein, 496 U.S. 617, 626
(1990).
        Evidence is  "material" "only if there is 'a reasonable probability that the Secretary
would have reached a different disposition of the disability claim if presented with the new
evidence.'" Foster, 279 F.3d at 357, quoting Size more v. Sec'y of Health & Human Servs., 865
F.2d 709, 711 (6th Cir. 1988).
        "Good cause" for failure to present the evidence to the ALJ is shown "by demonstrating a
reasonable justification for the failure to acquire and present the evidence for inclusion in
the hearing before the ALJ." Foster, 279 F.3d at 357, citing Willis v. Sec'y of Health &
Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (per curia).

walk for any length of time (Tr. 49).

Plaintiff also argues that "good cause" exists for the evidence not having been presented to the ALJ.  Plaintiff notes that Dr. Piszel ordered the MRI of Plaintiff in late March 2010 (before the April 21, 2010 hearing) but, apparently Dr. Piszel was not  able to review the MRI results and render an opinion, thus resulting in the Dr. Piszel's statement not being issued until May 21, 2010.[13]

As a general rule evidence provided after hearing shall not be considered part of the record for the purpose of a review of the record for substantial evidence.  Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996).  As noted, the Court shall remand subject to it being established that the evidence is new, material, and that there was good cause for it not having been timely presented.  See 42 U.S.C. § 405(g), Cline, 96 F.3d at 148.  The claimant bears the burden of establishing the requirements of remand.  Foster, 279 F.3d at 348, 357 (6th Cir. 2001).

The time line relevant to this issue is as follows:

| | |
|---|---|
| July 17, 2009 | (Plaintiff requested a hearing) (Tr. 73-74). |
| March 1, 2010 | (Hearing notice issued) (Tr. 24). |
| March, 23 2010 | (Dr. Piszel ordered MRI) (Docket No. 16, p. 9, 19). |
| April 21, 2010 | (Hearing) (Tr. 38-60). |
| May 21, 2010 | (MRI review statement issued by Dr. Piszel) (Docket No. 16, Attachment) |
| June 11, 2010 | (ALJ issues decision) (Tr. 8-19). |
| July 7, 2010 | (Plaintiff requested review of hearing decision) (Tr. 6). |
| April 10, 2011 | (Appeals Council denial) (Tr. 1-3). |

Thus, Plaintiff had approximately three weeks from the date that Dr. Piszel issued his

---

[13]   Plaintiff also states that because the "record before the ALJ was devoid of any treating source opinion regarding Mr. Skaruppa's ability to perform work activities, this evidence supports the proposition that Mr. Skaruppa's medical impairment was disabling.". (Docket No. 16, p. 19).

statement until the ALJ issued his Decision and almost a year before the final Appeals Council review to submit Dr. Piszel's statement to the Commissioner.

Moreover, review of the transcript of the hearing establishes that, at the beginning of the hearing,  Plaintiff's counsel requested additional time to submit to the ALJ additional records not then in counsel's possession (Tr. 41-42) and the ALJ gave counsel until May 21, 2010, to submit those records (Tr. 42).  Moreover, at the end of the hearing, Plaintiff's counsel and the ALJ again addressed the issue of the additional records, wherein the ALJ reiterated his request that the records be sent to him by May 21, 2010, but that he wouldn't begin preparing his final decision until on or after May 24, 2010 (Tr. 59).

Despite this Plaintiff did not submit these records either to the ALJ or, thereafter, to the Appeals Council.

Plaintiff has only argued that Dr. Piszel's statement was not available at the time of the hearing.  Given, however, that Plaintiff had other opportunities to submit this evidence to the Commissioner, Plaintiff has failed to establish that good cause for not having presented this evidence until this case was filed in the instant Court.  See Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 485 (6th Cir. 2006) (denying sentence six remand request where claimant failed to identify "any obstacles to her submission of this evidence during [the] administrative proceedings").

Additionally, even were there no "good cause" bar to Plaintiff's request for remand the Plaintiff has not established that the evidence in Dr. Piszel's statement is material.  Evidence is material where there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Size more v.

28

<u>Sec'y of Health and Human Servs.</u>, 865 F.2d 709, 711 (6th Cir. 1988).  Although Plaintiff argues that Dr. Piszel statement supports the conclusion that he is unable to sit, stand or walk for any length of time, it does not appear to this Court, having reviewed Dr. Piszel's statement, that the Commissioner would have necessarily reached a different determination on the basis of what is contained in Dr. Piszel's statement, as the substantial weight of the evidence in this case, including the observations and opinions of Drs. Waldbaum, Bolz, Klyop, and Halas (Tr. 16–17, 263–69, 270–77, 291, 307), tend to support the ALJ's conclusion.  Dr. Piszel's assessment is also undermined by his conservative treatment prescriptions (Tr. 16–17, 200–242, 287–88).   It is this Court's opinion, then, that the information and views set forth in Dr. Piszel's statement would not have altered the ALJ's disability determination.

Accordingly, Plaintiff's Issue No. 3 fails, and the Court finds that there is no basis to remand this case to the Commissioner to allow for review of Dr. Piszel's statement.

## IX.  Conclusion

For these reasons, the Magistrate Orders that Court Affirm the Commissioner's Decision.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   May 3, 2012

29